01

02

03

04

05

06          UNITED STATES DISTRICT COURT
        WESTERN DISTRICT OF WASHINGTON
07                  AT SEATTLE

08  BETTY JEAN DUKES,                    )
                                         )   CASE NO. C12-0509-RSL-MAT
09          Plaintiff,                   )
                                         )
10      v.                               )   REPORT AND RECOMMENDATION
                                         )
11  MICHAEL J. ASTRUE, Commissioner of   )
    Social Security,                     )
12                                       )
            Defendant.                   )
13  _____ )

14          Plaintiff Betty Jean Dukes appeals the final decision of the Commissioner of the Social

15  Security Administration ("Commissioner") which denied her application for Disability

16  Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, after

17  a hearing before an administrative law judge ("ALJ").  For the reasons set forth below, the

18  Commissioner's decision is REVERSED and REMANDED for further proceedings.

19                      I.  FACTS AND PROCEDURAL HISTORY

20          Plaintiff was born in 1957 and was 50 years old on the alleged disability onset date.

21  (Administrative Record ("AR") 127.)   She has a high school education and previously worked

22  as a sales clerk and medical records clerk.   (AR 24, 188.)  Plaintiff applied for DIB on March

REPORT AND RECOMMENDATION
PAGE -1

01  20, 2008, alleging disability beginning July 7, 2007, due to a back impairment.  (AR 61, 62,

02  127-30, 163.)

03      The Commissioner denied plaintiff's claim initially and on reconsideration.   (AR

04  66-68, 70-71.)  Plaintiff requested a hearing, which took place on February 8, 2010.  (AR

05  21-56.)  On May 19, 2010, the ALJ issued a decision finding plaintiff not disabled.  (AR

06  7-14.)  The Appeals Council denied plaintiff's request for review (AR 1-3), and she filed a

07  complaint in the United States District Court for the Western District of Washington.   On June

08  7, 2011, the Court reversed the ALJ's decision and remanded the case for further administrative

09  proceedings.   (AR 794.)

10      On December 8, 2011, the ALJ held another hearing.  (AR 698-773.)  On January 23,

11  2012, the ALJ issued a decision finding plaintiff not disabled.  (AR 641-53.)  The Appeals

12  Council denied plaintiff's request for review, making the ALJ's ruling the "final decision" of

13  the Commissioner as that term is defined by 42 U.S.C. § 405(g).   On March 26, 2012, plaintiff

14  timely filed the present action challenging the Commissioner's decision.   (Dkt. No. 1.)

## II.   JURISDICTION

16      Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

17  405(g) and 1383(c)(3).

## III. DISCUSSION

19      The Commissioner follows a five-step sequential evaluation process for determining

20  whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).   At step one, it

21  must be determined whether the claimant is gainfully employed.   The ALJ found plaintiff had

22  not engaged in substantial gainful activity since the alleged onset date.  (AR 643.)  At step

REPORT AND RECOMMENDATION
PAGE -2

01   two, it must be determined whether the claimant suffers from a severe impairment.   The ALJ

02   found plaintiff's degenerative disc disease and obesity severe.   *Id*.   Step three asks whether the

03   claimant's impairments meet or equal a listed impairment.   The ALJ found that plaintiff's

04   impairments did not meet or equal the criteria of a listed impairment.   (AR 645.)   If the

05   claimant's impairments do not meet or equal a listing, the Commissioner must assess residual

06   functional capacity ("RFC") and determine at step four whether the claimant has demonstrated

07   an inability to perform past relevant work.   The ALJ found plaintiff able to perform light work,

08   except she is able to stand and/or walk four hours per day for one hour at a time, sit six hours per

09   day for one hour at a time with the ability to arise from a seated position for a few minutes.

10   (AR 646.)   She can occasionally bend, stoop, crouch, and operate foot pedals, but she can

11   never kneel, crawl, or balance.   In addition, plaintiff must avoid unprotected heights; climbing

12   ladders, scaffolds, and ropes; and exposure to vibrations and extreme cold.   With that

13   assessment, the ALJ found plaintiff capable of performing past relevant work as a medical

14   receptionist.   (AR 651.)

15        If the claimant is able to perform her past relevant work, she is not disabled; if the

16   opposite is true, then the burden shifts to the Commissioner at step five to show that the

17   claimant can perform other work that exists in significant numbers in the national economy,

18   taking into consideration the claimant's RFC, age, education, and work experience.   In the

19   alternative, the ALJ found, based on the testimony of the vocational expert, there were jobs that

20   existed in significant numbers in the national economy that plaintiff could perform, such as

21   office helper, storage rental clerk, and telephone solicitor.   (AR 653.)   The ALJ concluded

22   plaintiff has not been under a disability from July 7, 2007, through the date of the decision.   *Id*.

REPORT AND RECOMMENDATION
PAGE -3

01    This Court's review of the ALJ's decision is limited to whether the decision is in

02 accordance with the law and the findings supported by substantial evidence in the record as a

03 whole.  *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).   Substantial evidence means more

04 than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable

05 mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881 F.2d 747,

06 750 (9th Cir. 1989).   If there is more than one rational interpretation, one of which supports the

07 ALJ's decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278 F.3d 947, 954

08 (9th Cir. 2002).

09    Plaintiff argues that the ALJ erred in identifying her back impairment as degenerative

10 disc disease but not facet arthropathy, evaluating the medical opinion evidence, and in finding

11 she previously worked as a medical receptionist.  (Dkt. 11 at 4.)   Plaintiff requests remand for

12 further administrative proceedings.  *Id*. at 21.   The Commissioner argues that the ALJ's

13 decision is supported by substantial evidence and should be affirmed.  (Dkt. 12.)

14 A.    Medical Opinion Evidence

15    Plaintiff argues the ALJ erred in evaluating the opinions of her treating physicians.

16 (Dkt. 11.)   In general, more weight should be given to the opinion of a treating physician than

17 to a non-treating physician, and more weight to the opinion of an examining physician than to a

18 non-examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).   Where not

19 contradicted by another physician, a treating or examining physician's opinion may be rejected

20 only for "'clear and convincing'" reasons.  *Id*. (quoting *Baxter v. Sullivan*, 923 F.2d 1391,

21 1396 (9th Cir. 1991)).   Where contradicted, a treating or examining physician's opinion may

22 not be rejected without "'specific and legitimate reasons' supported by substantial evidence in

01  the record for so doing."   *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

02  The ALJ may reject physicians' opinions "by setting out a detailed and thorough summary of

03  the facts and conflicting clinical evidence, stating his interpretation thereof, and making

04  findings."   *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).   Rather than merely stating

05  his conclusions, the ALJ "must set forth his own interpretations and explain why they, rather

06  than the doctors', are correct."   *Id.*

07          "The opinion of a nonexamining physician cannot by itself constitute substantial

08  evidence that justifies the rejection of the opinion of either an examining physician or a treating

09  physician."   *Lester*, 81 F.3d at 831 (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir.

10  1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984)).   However, "the report of a

11  nonexamining, nontreating physician need not be discounted when it 'is not contradicted by *all*

12  *other evidence* in the record.'"   *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995) (quoting

13  *Magallanes*, 881 F.2d at 752).

14          1.   Mitchel D. Storey, D.O.

15          Dr. Storey began treating plaintiff in November 2007 after she injured her back lifting

16  clothes from a bent position while working at a Macy's department store.   (AR 487-88.)   Dr.

17  Storey found plaintiff had lumbar disc syndrome superimposed on chronic low back pain, and

18  right sciatic discomfort with no specific neurologic deficit.   (AR 488.)   He concluded that the

19  "[p]rimary goal is to be able to increase her activity and return to work; estimated time is six to

20  eight weeks, probably with limitations.   Long term goals may take three to six months."   (AR

21  488.)   The ALJ cited this initial treatment note and gave it "some weight," finding it was "an

22  accurate representation of the cited medical findings," and was consistent with the opinion of

01 the medical expert at the hearing.  (AR 651.)  Aside from this initial treatment note, the ALJ

02 did not address Dr. Storey's subsequent notes or opinions.  (AR 651.)

03      In April 2008, Dr. Storey diagnosed chronic facetogenic low-back pain following

04 lumbar spraining injury and opined "she is clearly not ready to go back to work."  (AR

05 476-77.)  In May 2008, he noted that due to facet arthropathy she would not be able to work as

06 a cashier without the ability to sit when necessary.  (AR 474.)  In June 2008, Dr. Storey agreed

07 that she had some nonphysiologic findings, but stated that she would be "destined to failure

08 should she be thrown out into the workforce because her pain has now consumed her."  (AR

09 472.)  In August 2008, Dr. Storey noted "[h]er limitations at this point of sitting, standing, and

10 walking tolerances with her chronic pain are certainly not conducive to employment."  (AR

11 626.)  In September 2008, Dr. Storey opined plaintiff continued to have residuals of lumbar

12 straining injury with facet arthropathy and, although she was improving with physical therapy,

13 she should continue to remain off work.  (AR 976.)

14      Because Dr. Storey opined that plaintiff's impairments significantly interfered with her

15 ability to perform basic work activities, the ALJ was required to explain why this probative

16 evidence was rejected or not discussed.  *See Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir.

17 1984).  The record clearly establishes the ALJ failed to give any reasons to reject Dr. Storey's

18 opinions regarding plaintiff's impairments.  The ALJ erred in failing to do so.

19      The Commissioner concedes the ALJ failed to discuss Dr. Storey's opinions, but

20 contends that the error was harmless.  (Dkt. 12 at 11.)  Where the ALJ errs by failing to

21 provide any reasons for rejecting the relevant evidence, the error is harmless only if the Court

22 "can confidently conclude that no reasonable ALJ, when not making the same error as the ALJ

01  could have reached a different disability determination."  *Stout v. Comm'r, Soc. Sec. Admin.*,

02  454 F.3d 1050, 1055-56 (9th Cir. 2006) (recognizing application of harmless error in Social

03  Security context where a "mistake was nonprejudicial to the claimant or irrelevant to the ALJ's

04  ultimate disability conclusion.").   The Commissioner asserts that any omission would not

05  affect the ALJ's decision because Dr. Storey's opinions covered only a seven month period,

06  appeared to be based on plaintiff's self-reports, and were cumulative of the opinions the ALJ

07  permissibly rejected.   As the ALJ did not mention these reasons in rejecting Dr. Storey's

08  opinions, the Commissioner's argument is an improper post-hoc rationalization this Court

09  cannot rely on to affirm the ALJ.  *See Pinto v. Massanari*, 249 F.3d 840, 847–48 (9th Cir.

10  2001).   Because the ALJ did not make legally sufficient findings to reject Dr. Storey's

11  opinions, the Court cannot say "no reasonable ALJ, when fully crediting the testimony, could

12  have reached a different disability determination."  *Stout*, 454 F.3d at 1055.   Hence, the

13  Commissioner's suggestion that the ALJ's failure to consider Dr. Storey's opinions was

14  harmless fails.   On remand, the ALJ must reassess Dr. Storey's opinions.

15       2.   <u>Jeffrey Fitzthum, M.D.</u>

16       On March 10, 2008, Dr. Fitzthum performed a consultation report on referral from Dr.

17  Storey.  (AR 417-19, 489-91.)   He noted that a lumbar MRI from September 30, 2007,

18  showed "surprisingly healthy" lumbar disks – except for a mild and broad-based disk bulge,

19  moderate right foraminal narrowing, and moderate facet arthropathy at L5-S1; and mild facet

20  arthropathy at L4-L5.  (AR 417, 489.)   He also noted that a February 2008 SPECT bone scan

21  showed multi-level facet joint arthropathy, most notably at L5-S1 and L4-L5.  *Id*.   In addition,

22  a lumbar CT scan from 2005 showed moderate-severe facet arthropathy at L5-S1 and mild facet

01   arthropathy at L4-L5.  *Id.*  On examination, he found plaintiff's gait was guarded with short

02   steps, she had reduced range of motion, she was tight and tender on palpitation, and straight leg

03   raises provoked right sided back pain.  (AR 418-19, 490-91.)  Dr. Fitzthum opined "the

04   location of pain and the findings of lumbar CT, MRI, and SPECT indicate that back pain is

05   predominantly facetogenic; there is also evidence on MRI and physical examination for

06   possible right L5 radiculopathy."  (AR 419, 491.)  Based on his findings, Dr. Fitzthum opined

07   plaintiff was "unable to return to work at this point."  *Id.*

08         The ALJ rejected this opinion, stating as follows:

09         The Administrative Law Judge also considered the May 2008 opinion expressed by
           Dr. Fitzthum that the claimant was unable to return to work "at this point."  [AR
10         491.]  However, the listed functional capacity limitations were all estimates by the
           claimant.  [AR 490.]  Furthermore, this opinion does not indicate any belief that
11         the claimant was unable to work for any 12 continuous months, based on her
           impairments.

12

13   AR 650.  The Court agrees with plaintiff these are not specific and legitimate reasons for

14   rejecting Dr. Fitzthum's opinion.

15         "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a

16   claimant's self-reports that have been properly discounted as incredible."  *Tomassetti v.*

17   *Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Morgan v. Comm'r Soc. Sec. Admin.*, 169

18   F.3d 595, 602 (9th Cir. 1999)).  There is no indication in this record, however, that Dr.

19   Fitzthum's opinion that plaintiff was unable to return to work was based on plaintiff's own

20   estimate of her functional capacity rather than on the objective medical evidence and his clinical

21   findings.  Indeed, as plaintiff points out, this Court previously found that Dr. Fitzthum

22   "considered objective medical evidence in rendering his opinions and did not rely entirely on

REPORT AND RECOMMENDATION
PAGE -8

01  Ms. Duke's subjective complaints." (AR 800.)   Thus, this is not a specific and legitimate

02  reason to reject Dr. Fitzthum's opinion.

03       The ALJ also discounted Dr. Fitzthum's opinion because he did not specifically indicate

04  that plaintiff was unable to work for 12 continuous months.   (AR 650.)   However, as plaintiff

05  points out, Dr. Fitzthum did not specifically indicate that plaintiff was able to work or would

06  improve within 12 months either.   While it may be relevant to whether plaintiff's disability is

07  for a closed period, it is not probative of Dr. Fitzthum's opinion regarding plaintiff's

08  impairments and limitations.   The fact that Dr. Fitzthum did not expressly indicate plaintiff

09  would be unable to work for 12 consecutive months is not a specific and legitimate reason to

10  reject his opinion that plaintiff was "unable to return to work at this point."

11       3.  C. William Korbonits, M.D.

12       On March 21, 2009, Dr. Korbonits examined plaintiff and completed a Department of

13  Social and Health Services ("DSHS") physical evaluation in which he opined that plaintiff was

14  limited to sedentary work.  (AR 542-46, 559-72.)   The ALJ gave Dr. Korbonits' opinion

15  "some weight," stating as follows:

16       His completion of this form, however, only noted such minimal pain with shoulder
        shrug and tender left lumbar muscles.   The assessments of improvement appear to
17       have their foundation merely in what the claimant told the doctor.  In fact, the
        assessment by Dr. Korbonits indicated that the limitations would only last some 6
18       months, suggesting that the duration requirement of 12 continuous months are not
        satisfied.   Furthermore, this assessment is missing one page, which undercuts its
19       value.

20  (AR 650.)   The ALJ rejected this opinion because his only findings were that she had minimal

21  pain with shoulder shrug and tender left lumbar muscles.   (AR 542, 650.)   However, the

22  record shows Dr. Korbonits also found plaintiff had slow gait due to pain (AR 542), muscle

01  weakness (AR 542, 562), overweight at 207 pounds (AR 542, 563), a bone scan showing facet

02  degeneration in the lumbar spine (AR 542, 562), moderate limitations in her ability to sit, stand,

03  walk, lift, handle, and carry (AR 543), and reduced range of motion with extension and flexion

04  (AR 545-46).   The ALJ failed to explain how these findings are insufficient to support Dr.

05  Korbonits opinion.

06        The ALJ also rejected Dr. Korbonits' opinion because he estimated her limitations

07  would last 6 months and, as such, did not establish disability for a continuous period of 12

08  months.   (AR 650.)   The ALJ's rationale is based on the 12–month durational requirement set

09  forth in 42 U.S.C. § 423(d)(1)(A).   Under that section, the term "disability" means "the

10  inability to engage in any substantial gainful activity by reason of any medically determinable

11  physical or mental impairment which can be expected to result in death or which has lasted or

12  which can be expected to last for a continuous period of not less than 12 months."   However, as

13  plaintiff points out, Dr. Korbonits's opinion in March 2009 was more than a year after the

14  alleged onset date and was preceded and followed by opinions of treating physicians consistent

15  with or more limiting than his opinion.   (AR 474, 482, 488, 491, 551, 601, 636, 977, 976.)

16  Thus, the ALJ's rejection of Dr. Korbonits's opinion based upon the durational requirement of

17  § 423(d)(1)(A) is not supported by substantial evidence.

18        Finally, the ALJ rejected Dr. Korbonits's opinion because page one of the DSHS

19  evaluation was missing.   (AR 650.)   Plaintiff correctly argues that the ALJ erred.   Even

20  without the missing page, the ALJ should have been able to conduct a proper evaluation of the

21  evidence as the first page only contains the plaintiff's chief complaints and symptoms.   (*See*

22  AR 634, 948.)   To the extent the evidence was ambiguous or inadequate, the ALJ had a duty to

REPORT AND RECOMMENDATION
PAGE -10

01  develop the record to resolve the ambiguity.   "Ambiguous evidence, or the ALJ's own finding

02  that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's

03  duty to 'conduct an appropriate inquiry.'"   *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th

04  Cir. 2001) (citation omitted).   Accordingly, the ALJ erred in rejecting Dr. Korbonits's opinion.

05          4.   Steven Dresang, M.D.

06          Plaintiff began seeing Dr. Dresang in June 2009.   (AR 600-01.)   On June 2, 2009, he

07  noted that "[c]urrently she is unable to work."   (AR 601.)   On June 18, 2009, Dr. Dresang

08  wrote a letter in which he opined that plaintiff "has osteoarthritis of the spine that has caused her

09  to be unable to work since May of 2007.   She continues to have daily symptoms and is unable

10  to lift over 10 lbs or stand for prolonged periods of time."   (AR 551.)   The ALJ rejected Dr.

11  Dresang's letter stating, "With no reference to objective medical findings, these statements are

12  unsupported."   (AR 650.)

13          Plaintiff argues that the ALJ erred in failing to address Dr. Dresang's June 2, 2009,

14  finding that plaintiff was unable to work.   (Dkt. 11 at 14.)   However, Dr. Dresang's June 2,

15  2009, finding that plaintiff was unable to work is necessarily encompassed in his June 18, 2009,

16  letter two weeks later in which he opined that plaintiff has been unable to work since May 2007.

17  (*Compare* AR 601 and AR 551.)   As the June 2 statement is cumulative of the June 18 letter

18  which the ALJ addressed, the ALJ did not err in failing to also address the June 2 finding.

19          On September 17, 2009, Dr. Dresang completed a DSHS physical evaluation in which

20  he opined plaintiff was limited to sedentary work, and could not lift over 10 pounds, push over

21  25 pounds, bend, stoop, and must be able to change positions "ad lib."   (AR 636.)   The ALJ

22  rejected this opinion stating, "Again no objective medical findings were cited in support of such

01   conclusions as the claimant being incapable of lifting over 10 pounds."   (AR 650-51.)

02        An ALJ may reject a treating physician's opinion that is conclusory and unsupported.

03   *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas*,

04   278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating

05   physician, if that opinion is brief, conclusory, and inadequately supported by clinical

06   findings.").   Here, however, the ALJ's determination that Dr. Dresang's findings are not

07   supported is at odds with the undisputed fact that plaintiff has osteoarthritis as shown through

08   an MRI, SPECT scan, and CT scan.   (AR 581, 583, 592, 600.)   It is also contrary to the other

09   medical evidence in the record.   As this Court previously found, "The DSHS evaluation

10   contains the doctor's notes showing he performed a clinical examination and that based on that

11   examination reached the opinion Ms. Dukes was limited to sedentary work.  [AR 636-37.]

12   Moreover, Dr. Dresang's separate treatment notes contain additional information which

13   flesh-out his opinion about Ms. Duke's impairments, at least as to her ability to stand, walk, and

14   sit.  [AR 590-602.]"  (AR 802.)   For example, in June 2009, Dr. Dresang noted that she

15   walked with a limp.   (AR 600.)   In July 2009, Dr. Dresang saw plaintiff after she was seen in

16   the emergency room for low back pain and found she was tender on examination.   (AR 592.)

17   In September 2009, Dr. Dresang noted she had osteoarthritis and limited range of motion in her

18   spine.   (AR 635-36.)   Therefore, clinical findings support Dr. Dresang's opinions.

19        This Court previously acknowledged that Dr. Dresang's treatment records do not

20   indicate plaintiff is incapable of lifting over 10 pounds, and hence it was correct for the ALJ to

21   reject that portion of the doctor's opinion regarding lifting and pushing limitations.   (AR

22   802-03.)   Nevertheless, the ALJ erred, as discussed above, in rejecting Dr. Dresang's June 18,

01   2009, letter and September 17, 2009, DSHS opinion regarding plaintiff's standing, walking,

02   bending, and stooping ability, and her need to change positions, as unsupported by objective

03   medical findings.

04          5.   <u>Kathy Thomas, M.D.</u>

05          On August 2, 2010, Dr. Thomas opined in a DSHS evaluation that plaintiff's

06   osteoarthritis and myofascial pain syndrome caused marked to severe limitations.   (AR 950.)

07   She opined plaintiff could lift no more than 10 pounds and would be limited to sedentary work,

08   meaning the ability to lift 10 pounds maximum and frequently lift and/or carry small items such

09   as files and tools.   *Id.*   She estimated plaintiff's limitations would last at least twelve months.

10   (AR 951.)

11          The ALJ rejected this evaluation stating that "[t]he alleged limitation to lifting no more

12   than 10 pounds is unaccompanied by any explanation through the use of objective medical

13   findings."   (AR 651.)   The Court finds the record supports the ALJ's conclusion that Dr.

14   Thomas's treatment records do not reflect the lifting limitations set forth in the evaluation.   An

15   ALJ is not required to accept a medical opinion that is inadequately supported by medical

16   findings.   *See Batson*, 359 F.3d at 1195 (holding that an ALJ may discount treating physicians'

17   opinions that are brief, conclusory, or unsupported by the record as a whole or by objective

18   medical findings); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (holding an ALJ

19   may discount the conclusory opinion of an examining or treating physician if the opinion is

20   unsupported by clinical findings).   The ALJ did not err in his treatment of Dr. Thomas's

21   opinion.

22          On August 19, 2011, Dr. Thomas completed a DSHS form in which she

01 checked-marked boxes indicating that plaintiff could not sit, stand, or walk for brief or

02 prolonged periods, or lift any weight.   (AR 937.)   She indicated this condition was expected to

03 impair plaintiff's work function permanently.   *Id*.   The ALJ rejected Dr. Thomas's opinion

04 finding that "[t]his assessment occurred at a time in which the claimant was 'scheduled for

05 surgery or in the process of getting approval for surgery' which explains the extreme

06 restrictions.   There is no evidence cited by Dr. Thomas to indicate that this level of restriction

07 lasted for any extended period of time."   (AR 651.)   Plaintiff did not challenge this finding.

08        On August 22, 2011, three days later, Dr. Thomas wrote in treatment notes, "doubt pt

09 will be able to return to work unless very part time and sedentary."   (AR 944.)   The ALJ did

10 not address Dr. Thomas's opinion.   The Commissioner argues any error the ALJ committed is

11 harmless because this opinion was cumulative of her August 19, 2011 form opinion (AR 937)

12 and, therefore, plaintiff cannot show prejudice.   Dkt. 12 at 11.

13        As noted above, the ALJ specifically rejected a similar opinion prepared just three days

14 earlier.   If evidence is cumulative of other evidence specifically addressed, the ALJ is not

15 required to address and discount the cumulative evidence.   *See Magallanes*, 881 F.3d at 755

16 Here, Dr. Thomas's treatment note was cumulative of her form opinion, thus, any error in

17 failing to give specific and legitimate reasons for rejecting it was harmless.   Accordingly,

18 plaintiff's claim does not warrant reversal or remand.

19 B.    Step Two Finding

20        Plaintiff argues, and the Court agrees, the ALJ erred at step two in failing to find her

21 facet arthropathy a severe impairment at step two.   (Dkt. 11 at 4.)   At step two, a claimant

22 must make a threshold showing that her medically determinable impairments significantly limit

01  her ability to perform basic work activities.   *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987);

02  20 C.F.R. §§ 404.1520(c), 416.920(c).   "Basic work activities" refers to "the abilities and

03  aptitudes necessary to do most jobs."   20 C.F.R. §§ 404.1521(b), 416.921(b).   "An

04  impairment or combination of impairments can be found 'not severe' only if the evidence

05  establishes a slight abnormality that has 'no more than a minimal effect on an individual's

06  ability to work.'"   *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting Social

07  Security Ruling ("SSR") 85-28).   "[T]he step-two inquiry is a de minimis screening device to

08  dispose of groundless claims."   *Id*. (citing *Bowen*, 482 U.S. at 153-54).

09          Here, there is objective medical evidence that plaintiff suffers from facet arthropathy.

10  (AR 644.)   As indicated above, Drs. Storey, Fitzhum, Korbonits, and Dresang opined that

11  plaintiff's facet arthropathy caused work-related limitations.   (AR 542, 551, 636, 976.)   While

12  a claimant has the burden to prove a severe impairment at step two, the ALJ still has a duty to

13  explain or make factual findings to support her conclusion.   The ALJ made no such findings

14  and instead relied on the opinions of independent medical examiners Paul Reis, M.D., and

15  William Thieme, M.D., who both opined that plaintiff was able to return to work due to the

16  absence of any work-related restrictions.   (AR 522-36, 649.)   However, their opinions were

17  limited to whether plaintiff's work-related injury – lumbar strain/sprain – rendered her unable to

18  work.   (AR 530-32, 536.)   As this Court previously found, although both doctors noted

19  plaintiff suffered from facet arthropathy, neither gave opinions about the effects of this

20  impairment on her ability to work.   (AR 799.)   Thus, the medical expert's opinion does not

21  negate the opinions of plaintiff's treating physicians' opinions which encompassed plaintiff's

22  degenerative disc disease and her facet arthropathy.

REPORT AND RECOMMENDATION
PAGE -15

01       The ALJ indicated that she asked the medical expert about plaintiff's facet arthropathy,

02   however, the record shows that she asked the medical expert to distinguish lumbar strain and

03   facet generative arthritis.   (AR 652, 715.)   The ALJ did not ask the medical expert whether

04   plaintiff's facet arthropathy could reasonably cause the symptoms alleged, or whether the

05   opinions of the independent medical examiners should be given less weight because they did

06   not consider the effect of this impairment on her ability to work.   Under these circumstances,

07   the Court concludes the ALJ's failure to consider plaintiff's facet arthropathy and the combined

08   effect it has with her other impairments on plaintiff's ability to function is not harmless.

09   C.    Step Four

10       Plaintiff contends the ALJ erred in determining she had past relevant work as a medical

11   receptionist because the vocational expert ("VE") testified that it was unclear whether plaintiff

12   had worked as a medical receptionist or an administrative clerk.   (Dkt. 11 at 17.)   Plaintiff

13   asserts this issue is significant because the VE found she could work as a medical receptionist,

14   but not as an administrative clerk.   *Id*.   The Commissioner responds that any error in the ALJ's

15   step four finding was harmless because the ALJ also performed an alternative step five analysis

16   and found plaintiff could perform other jobs in significant numbers in the national economy.

17   The Court need not resolve these contentions as the ALJ erred in evaluating the medical

18   evidence and must necessarily reevaluate on remand what impact, if any, this issue has on

19   plaintiff's RFC, and steps four and five.

20   D.    Remand for further proceedings

21       The Court may remand for an award of benefits where "the record has been fully

22   developed and further administrative proceedings would serve no useful purpose." *McCartey v.*

REPORT AND RECOMMENDATION
PAGE -16

01  *Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).   This occurs when:   (1) the ALJ has failed to

02  provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no

03  outstanding issues that must be resolved before a determination of disability can be made; and

04  (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he

05  considered the claimant's evidence.   *Id*. at 1076–77.

06          Here, there are outstanding issues that must be resolved.   As indicated above, the

07  opinions of Drs. Storey, Fitzhum, Korbonits, and Dresang must be reassessed, and the effect of

08  plaintiff's facet arthropathy on her residual functional capacity is unresolved.   Therefore,

09  remand is appropriate in order to allow the Commissioner the opportunity to consider the

10  medical evidence as a whole and to incorporate the properly considered medical evidence into

11  the consideration of plaintiff's RFC.

12                                    IV.   CONCLUSION

13          For the foregoing reasons, the Court recommends that the Commissioner's decision be

14  REVERSED and REMANDED for further administrative proceedings not inconsistent with

15  this Report and Recommendation.   On remand, the ALJ should utilize the five step sequential

16  evaluation process and (1) further develop the medical evidence as necessary, (2) reassess step

17  two, (3) reevaluate the opinions of Drs. Storey, Fitzhum, Korbonits, and Dresang, (4) reevaluate

18  plaintiff's RFC, and (5) reassess steps four and five with the assistance of a vocational expert if

19  deemed appropriate.   A proposed order accompanies this Report and Recommendation.

20          DATED this 12th day of September, 2012.

21

22                                          _____
                                            Mary Alice Theiler
                                            United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE -17